UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| DENNYELLE NIKOLE BATY, | ) | No. ED CV 13-2348-PLA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on December 27, 2013, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on January 30, 2014, and February 3, 2014. Pursuant to the Court's Order, the parties filed a Joint Stipulation on September 11, 2014, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born on September 25, 1985. [Administrative Record ("AR") at 173, 180.] She has past relevant work experience as a data entry clerk, laundry worker, child monitor, general cashier, and stock clerk. [AR at 31, 231.]

On April 19, 2010, plaintiff filed an application for Disability Insurance Benefits, and on April 27, 2010, she filed an application for Supplemental Security Income payments. [AR at 21, 173-79, 180-86.] In both applications, plaintiff alleged disability beginning on January 1, 2007. [AR at 21, 173, 180, 189.] After the applications were denied initially and on reconsideration, plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 21, 90-94.] A hearing was held on August 1, 2012, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 21, 40-61.] A vocational expert ("VE") also testified. [AR at 21, 61-64.] On August 24, 2012, the ALJ issued a decision concluding that plaintiff was not under a disability from January 1, 2007, through the date of the decision. [AR at 21-32.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 16-17.] On October 22, 2013, the Appeals Council denied review. [AR at 3-7.] This action followed.


## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010).

"Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (internal quotation marks and citation omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.

1998) (same).   When determining whether substantial evidence exists to support the

Commissioner's decision, the Court examines the administrative record as a whole, considering

adverse as well as supporting evidence.  Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001);

see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must

consider the entire record as a whole and may not affirm simply by isolating a specific quantum

of supporting evidence.") (internal quotation marks and citation omitted).   "Where evidence is

susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  Ryan,

528 F.3d at 1198 (internal quotation marks and citation omitted); see Robbins v. Soc. Sec. Admin.,

466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the

ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.").

**IV.**

**THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

to engage in any substantial gainful activity owing to a physical or mental impairment that is

expected to result in death or which has lasted or is expected to last for a continuous period of at

least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir.

1992).

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

828 n.5 (9th Cir. 1995), as amended April 9, 1996.  In the first step, the Commissioner must

determine whether the claimant is currently engaged in substantial gainful activity; if so, the

claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in

substantial gainful activity, the second step requires the Commissioner to determine whether the

claimant has a "severe" impairment or combination of impairments significantly limiting her ability

1  to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

2  If the claimant has a "severe" impairment or combination of impairments, the third step requires

3  the Commissioner to determine whether the impairment or combination of impairments meets or

4  equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., pt. 404, subpt.

5  P, app. 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's

6  impairment or combination of impairments does not meet or equal an impairment in the Listing,

7  the fourth step requires the Commissioner to determine whether the claimant has sufficient

8  "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the

9  claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform past

10  relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case

11  of disability is established.  The Commissioner then bears the burden of establishing that the

12  claimant is not disabled, because she can perform other substantial gainful work available in the

13  national economy.  The determination of this issue comprises the fifth and final step in the

14  sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966

15  F.2d at 1257.

16

17  **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

18         In this case, at step one, the ALJ found that plaintiff had not engaged in substantial gainful

19  activity since her alleged onset date, January 1, 2007.[1]  [AR at 23.]  At step two, the ALJ

20  concluded that plaintiff has the severe impairments of insulin dependent diabetes mellitus, and

21  headaches.[2]  [Id.]  At step three, the ALJ determined that plaintiff does not have an impairment

22  or a combination of impairments that meets or medically equals any of the impairments in the

23

24  ───────────────

25  [1]    The ALJ concluded that plaintiff met the insured status requirements of the Social
    Security Act through June 30, 2010.  [AR at 23.]

26  [2]    The ALJ found the following medically determinable impairments to be nonsevere:  history
27  of leukemia in remission; vision impairment; chronic diarrhea; methamphetamine abuse; and
    depression.  [AR at 24.]  Plaintiff does not challenge this determination.

28

Listings.[3]  [AR at 26.]  The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[4] to perform light work as follows:  lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for six hours out of an eight-hour workday with regular breaks; sit for six hours out of an eight-hour workday with regular breaks; frequently bend, stoop, climb stairs, balance, kneel, crawl, squat and crouch; occasionally climb ladders, ropes, or scaffolds; cannot work at unprotected heights, around moving machinery, or other hazards; must avoid extreme temperatures; cannot perform stressful work or work that is fast paced with quotas, such as production or assembly line type work; and cannot perform jobs that require hypervigilence or intense concentration on a particular task.  [Id.]  At step four, the ALJ concluded that plaintiff is able to perform her past relevant work as a data entry clerk, laundry worker, child monitor, general cashier, and stock clerk.[5]  [AR at 31.]  Accordingly, the ALJ determined that plaintiff was not disabled at any time from January 1, 2007, through the date of the decision.  [AR at 32.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when she failed to provide legally sufficient reasons for rejecting plaintiff's testimony.  [Joint Stipulation ("JS") at 5.]  As set forth below, the Court agrees with plaintiff and remands this matter for further proceedings.

---

[3]   See 20 C.F.R. pt. 404, subpt. P, app. 1.

[4]   RFC is what a claimant can still  do despite existing exertional and nonexertional limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

[5]   The Court notes that the VE testified only that a hypothetical individual with plaintiff's RFC could still perform the occupations of data entry clerk and general cashier.  [AR at 63-64.]

**A.      Plaintiff's Credibility**

Plaintiff contends the ALJ failed to provide clear and convincing reasons for rejecting her subjective testimony.  [JS at 8-17, 20.]

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis."  Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  Id.  (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  Second, if the claimant meets the first test, the ALJ may reject the claimant's testimony about the severity of his symptoms "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so."  Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  Factors to be considered in weighing a claimant's credibility include:  (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c).

Where, as here, the ALJ does not find "affirmative evidence" of malingering, the ALJ's reasons for rejecting a claimant's credibility must be clear and convincing.  See Benton, 331 F.3d at 1040 (where there is no evidence of malingering, the ALJ can reject claimant's testimony only by "expressing clear and convincing reasons for doing so.").  "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  Reddick, 157 F.3d at 722 (internal quotation marks and citation omitted); Berry, 622 F.3d at 1234 (same).  The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain."  Bunnell, 947 F.2d at 345-46 (internal quotation marks and citation omitted).  A "reviewing

6

court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Id. at 346.  As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient.  Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

Plaintiff testified at the hearing that she was unable to work due to her diabetes, alleging headaches, nausea, and frequent urinary tract infections associated with that condition; she has headaches three to four times per month that last up to a week; she is unable to walk farther than half a block due to leg pain, numbness in her feet, and dizziness; she has to sit for at least an hour after standing for longer than thirty minutes; she is insulin dependent and her diabetes remains uncontrolled despite treatment; and she has been hospitalized twice since March 2012 because of her condition.  [AR at 27, 54-60.]

The ALJ found plaintiff's complaints to be "less than fully credible." [AR at 27, 31.] The ALJ stated the following reasons for this determination:  (1) plaintiff's daily activities indicate that she engages in a "somewhat normal level of daily activity and interaction"; (2) plaintiff's treatment has been essentially routine and conservative in nature, primarily in the form of medications; (3) claimant's credibility regarding the severity of her symptoms and limitations is diminished because her allegations are greater than expected in light of the objective evidence of record; (4) plaintiff's appearance and demeanor at the hearing indicated no serious physical or mental problems; and (5) plaintiff has been noncompliant with her insulin treatment. [AR at 27-29.] The ALJ also noted that her RFC determination took into account not only the "benign objective findings," but "also generously considers the claimant's subjective complaints." [AR at 30.]

Having carefully reviewed the record, the Court concludes that the ALJ's credibility determination is not supported by substantial evidence.

### 1.    Plaintiff's Daily Activities

The ALJ found plaintiff's complaints to be "less than fully credible," based on plaintiff's daily activities, which indicated to the ALJ that plaintiff engaged in a "somewhat normal" level of daily activity and interaction despite her complaints. [AR at 28.] The ALJ also stated that "[t]he physical

and mental capabilities requisite to performing many of the tasks described . . . as well as the social interactions[,] replicate those necessary for obtaining and maintaining employment." [Id.]

An ALJ may discredit testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Id. (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1225 (9th Cir. 2010); Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009)).

As noted by the ALJ, plaintiff alleges that she suffers from headaches, nausea, and frequent urinary tract infections as a result of her diabetes. [AR at 27.] She gets long-lasting headaches three to four times a month, is unable to walk more than half a block, and has to sit for an hour if she stands for longer than thirty minutes. [Id.] She also suffers from leg pain, numbness in her feet, and dizziness. [Id.] Plaintiff reported that her daily activities include caring for her personal hygiene, shopping, reading, playing video games, preparing meals, completing chores, and watching her nine-year-old brother on Tuesdays in the afternoon. [AR at 27-28, 52, 55-57, 59-60.]

Other than her conclusory statement that these activities "replicate" the physical and mental capabilities required to obtain and maintain employment, the ALJ fails to provide any analysis as to how this is so. Additionally, although plaintiff testified to engaging in these various activities, the amount of involvement she described was generally minimal. For instance, she testified that she cooks grilled cheese sandwiches, chicken, or frozen foods; cleans her room; helps out with doing some dishes; visits family on the weekends; plays video or board games with her brothers; and helps her younger brother with things like getting a snack when she watches him. [AR at 56-58, 283-89.] In her Adult Function Report, plaintiff stated that there are some days when she is in so much pain that she wakes up, takes her medication, and sleeps most of the day. [AR at 283.] On other days, she is able to get up and "color, watch tv, go to lake (to feed the ducks), get on the computer and have a great day." [Id.] She also stated she cannot stand in the shower because of the pain in her legs and feet; she has stomach problems and has to wear "Night time

8

1   pull ups for younger children"; making meals takes her between 5 and 25 minutes depending on
2   what she makes; she spends no more than 10 to 20 minutes doing such chores as laundry,
3   dishes, and vacuuming; she does not go out alone because she never knows when her blood
4   sugar will drop; once a month she goes shopping for about 20 minutes; she goes to church online;
5   and she needs to frequently rest while walking.  [AR at 283-89.]  This does not describe an
6   individual who engages in a "normal" level of daily activity or whose activities "replicate" those
7   required for maintaining employment.

8       Accordingly, this was not a clear and convincing reason for discounting plaintiff's credibility.

9
10      **2.      Routine and Conservative Treatment**

11      The ALJ stated that plaintiff's treatment has been essentially routine and conservative in
12   nature, "primarily in the form of medications." [AR at 28.]  According to the ALJ, the "lack of more
13   aggressive treatment" suggests that plaintiff's symptoms and limitations are not as severe as
14   plaintiff alleges.  [Id.]

15      An ALJ may properly rely on the fact that only routine and conservative treatment has been
16   prescribed.  Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).  However, in this case there
17   is evidence that plaintiff's treatment has been anything but routine and conservative, in that it
18   includes two, and possibly three, extended hospitalizations, numerous MRIs and CT scans of her
19   head, two lumbar punctures to relieve her headaches, testing her blood sugar four to five times
20   a day, and regular insulin injections.

21      As noted by the ALJ, in October 2008, plaintiff was referred to the diabetes clinic for further
22   treatment, and her insulin dosage was increased a few weeks later.  [AR at 29.]  Between April
23   and August 2010, plaintiff's glucose levels were erratic, ranging between 97 and 239 based on
24   roughly bi-weekly lab tests.  [Id. (citing AR at 423-24, 450-67).]  From February 2011 through May
25   2011, plaintiff's glucose levels "continued to be extremely high," and she was admitted to the
26   hospital with diabetic ketoacidosis on May 11, 2011.  [Id. (citing AR at 590, 607, 629-30, 888).]

27      On May 11, 2011, plaintiff was admitted to the ICU with a blood glucose level of 575 [AR
28   at 561], and after being in the hospital for five days before her blood sugars normalized, plaintiff

was discharged with the following diagnoses:  diabetic ketoacidosis, resolved; acute on chronic renal failure (a sudden decline in renal function); migraine headaches; hyponatremia (abnormally low sodium in the blood); urinary tract infection; chronic diarrhea; history of leukemia, 1993, status post-bone marrow transplant; dehydration; and hypoalbuminemia (abnormally low levels of albumin in the blood).  [AR at 558.]

Plaintiff was again hospitalized on March 8, 2012, presenting with complaints of fainting, low blood pressure, starvation ketoacidosis, and several days of diarrhea.  [AR at 911.]  She was discharged fourteen days later on March 22, 2012.  [AR at 907.]  She was assessed with:  sepsis with metabolic acidosis; diabetic ketoacidosis; urinary tract infection; acute on chronic renal failure with hyponatremia and severe volume depletion; normal MCV anemia likely secondary to her leukemia; low albumin; borderline positive troponin (a protein released when there has been damage to the heart muscle); and history of leukemia, presumed to be in remission.  [AR at 924.] Plaintiff also testified at the hearing that she went back to the hospital in April 2012 for another week.[6]  [AR at 51.]  She tests her blood sugar levels four to five times daily.  [Id.]

With regard to plaintiff's headaches, the ALJ noted that plaintiff is treated with medications, but she had also received two lumbar punctures to relieve pressure.  [AR at 29 (citing AR at 390, 401-02).]  Throughout 2011 and 2012, plaintiff also underwent several MRIs and CT scans of her head.  [AR at 29-30 (citations omitted).]

Based on the foregoing, the Court cannot conclude that substantial evidence supports the ALJ's finding that plaintiff's treatment has been routine and conservative.  This was not a clear and convincing reason for discounting plaintiff's credibility.

---

[6]    There are no records in the AR reflecting this hospitalization.

### 3.      Objective Evidence of Record

After noting that plaintiff's treatment has been routine and conservative in nature, and that the lack of more aggressive treatment indicates plaintiff's symptoms and limitations are not as severe as she alleges, the ALJ noted that plaintiff's credibility is "diminished," because her allegations regarding the severity of her symptoms and limitations are greater than expected in light of the objective evidence of record. [AR at 28.]  While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the <u>only</u> basis to reject a claimant's credibility (<u>see</u> <u>Light v. Soc. Sec. Admin.</u>, 119 F.3d 789, 792 (9th Cir. 1997)), it is one factor that an ALJ can consider in evaluating symptom testimony.  <u>See</u> <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); <u>accord</u> <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001).  Here, other than possibly attempting to tie this reason to her statements regarding the routine and conservative nature of plaintiff's treatment, which the Court found was not a clear and convincing reason for discounting plaintiff's credibility, the ALJ does not provide any further analysis with regard to this conclusory statement.  Therefore, the Court finds that as it stands, this is not a clear and convincing reason for discounting plaintiff's credibility.

### 4.      Appearance and Demeanor

The ALJ also noted that plaintiff's appearance and demeanor at the hearing was a factor that influenced the ALJ's credibility determination.  [AR at 28.]  The ALJ specifically noted that plaintiff showed no sign of pain or discomfort while testifying; appeared healthy; had tanned skin; had dyed hair; and smiled and laughed during the hearing, "indicating no serious physical or mental problems."  [<u>Id.</u>]  The ALJ also "emphasized" that her observation of plaintiff's appearance and demeanor was only one among many factors relied on in assessing the credibility of plaintiff's allegations.  [<u>Id.</u>]  While this may be the case, the ALJ's personal observations come nowhere close to being a legally sufficient reason to discount plaintiff's allegations.  Certainly, the fact that someone is an insulin-dependent diabetic with migraine headaches would not seem to preclude

that individual from dying her hair, suntanning, smiling and laughing, or even generally "looking" healthy.  The fact that plaintiff exhibited these characteristics, and apparently did not grimace or groan with pain during the hearing, does not provide a specific, clear, or convincing basis for discounting plaintiff's allegations sufficient to assure this Court that the ALJ did not arbitrarily reject plaintiff's subjective testimony.

### 5.    Noncompliance with Medication

The ALJ discounted plaintiff's credibility stating that the treatment records "suggest the claimant may have failed to comply with her insulin treatment." [AR at 28]  She notes plaintiff's two hospitalizations due to "extremely elevated blood sugar levels."  The ALJ then offers the following observation:

> [The fact that the claimant was treated with an insulin drip, which resolved the problem,] indicates that if the claimant were properly taking her insulin injections, she would be able to keep her blood sugar levels stabilized.  This demonstrates a possible unwillingness to do what is necessary to improve her condition.  It may also be an indication that her symptoms are not as severe as she purports.

[Id.]

While an ALJ may consider an unexplained or inadequately explained failure to follow a prescribed course of treatment, Molina, 674 F.3d at 1112, the Court's review of the record finds no support for the ALJ's statement.  In fact, while the hospital records in 2011 make no mention of plaintiff's compliance with her medication [AR at 558-61], when hospitalized in 2012, the admitting notes indicated that plaintiff had been taking her medications.  [AR at 911.]  Moreover, plaintiff's blood sugar levels did not suddenly resolve when she was treated with an insulin drip -- her sugars took over five days to normalize in 2011, and over two weeks in 2012.  [AR at 561, 907.]  The ALJ's observation of the conclusions to be drawn from plaintiff's hospitalizations is nothing more than unfounded speculation and, as such, is not a clear and convincing reason for discounting plaintiff's allegations.

**B.      Conclusion**

The reasons given by the ALJ for discounting plaintiff's credibility do not sufficiently allow the Court to conclude that the ALJ discounted plaintiff's credibility on permissible grounds, and the Court is unable to defer to the ALJ's credibility determination.  See Lasich v. Astrue, 252 Fed. App'x 823, 825 (9th Cir. 2007) (court will defer to ALJ's credibility determination when the proper process is used and proper reasons for the decision are provided); accord Flaten v. Sec'y of Health and Human Serv., 44 F.3d 1453, 1464 (9th Cir. 1995).

**VI.**

**REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  Where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, it is appropriate to exercise this discretion to direct an immediate award of benefits.  Garrison v. Colvin, __ F.3d __, 2014 WL 3397218, at *20 (9th Cir. July 14, 2014) (setting forth the three-part credit-as-true standard for exercising the Court's discretion to remand with instructions to calculate and award benefits); see also Lingenfelter, 504 F.3d at 1041; Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004).  Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate.  See Benecke, 379 F.3d at 593-96; see also Connett v. Barnhart, 340 F.3d 871 (9th Cir. 2003) (cautioning that the credit-as-true rule may not be dispositive of the remand question in all cases, even where all three conditions are met).  In Garrison, the Ninth Circuit, noting that it had never exercised the flexibility set forth in Connett in a published decision, clarified that the nature of the flexibility described in Connett is "properly understood as requiring courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are

satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." <u>Garrison</u>, 2014 WL 3397218, at *21.

In this case, as discussed above, although the ALJ failed to provide legally sufficient reasons for rejecting plaintiff's subjective symptom testimony, it is not clear that if the improperly discredited evidence were credited as true the ALJ would be required to find the claimant disabled on remand.  Thus, the Court finds that there are outstanding issues that must be resolved before a final determination can be made.

In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings.  First, because the ALJ failed to provide clear and convincing reasons for discounting plaintiff's subjective symptom allegations, the ALJ on remand shall reassess plaintiff's credibility.  Next, the ALJ shall reassess plaintiff's RFC and determine, at step four, with the assistance of a VE, whether plaintiff is capable of performing her past relevant work.  If she is not so capable, then the ALJ should proceed to step five.

## VII.

### CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: September 22, 2014

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE